UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH PINKELMAN, | ) | CASE NO. 3:09CV1539 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| COMMISSIONER OF | ) | **REPORT AND RECOMMENDATION** |
| SOCIAL SECURITY, | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Defendant. | ) | |

Kenneth Pinkelman ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). ECF Dkt. #1.  For the following reasons, the undersigned RECOMMENDS that the Court REVERSE the Commissioner's decision and REMAND this case for further factfinding, analysis, and articulation by the administrative law judge ("ALJ"):

I.      **PROCEDURAL AND FACTUAL HISTORY**

On April 26, 2005, Plaintiff filed applications for SSI and DIB.  Tr. at 78-83.  Plaintiff's application was denied initially and on reconsideration.  Tr. at 53-61.

On July 12, 2006, Plaintiff filed a request for an administrative hearing.  Tr. at 48.  On January 9, 2008, an ALJ conducted an administrative hearing where Plaintiff requested to be represented by counsel.  *Id*. at 548-60.  On March 12, 2008, Plaintiff attended another hearing and was represented by counsel.  Tr. at 561-91.  At the hearing, the ALJ heard testimony from Plaintiff, Mary Ann Geckler, and Joseph Thompson, a vocational expert.  *Id*.  On January 23, 2009, the ALJ issued a Notice of Decision - Unfavorable.  *Id*. at 10-24.  Plaintiff filed a request for review, which the Appeals Council denied.  *Id*. at 3-9.

On July 7, 2009, Plaintiff filed the instant suit seeking review of the ALJ's decision.  ECF Dkt. #1.  On November 4, 2009, Plaintiff filed a brief on the merits.  ECF Dkt. #13. On January 19,

2010, Defendant filed a brief on the merits.  ECF Dkt. #16.  On January 29, 2010, Plaintiff filed a reply brief.  ECF Dkt. #17.

## II.    SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ found that Plaintiff had only one severe impairment, borderline intellectual functioning.  Tr. at 15-17.  The ALJ then found that Plaintiff did not meet or medically equal a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings").  *Id*. at 17-19.   The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: Plaintiff is limited to simple, routine tasks in a work setting that is relatively unchanging both in setting and process from day to day; he is limited to brief and superficial contact with others and no work with the general public; he cannot work at a fast pace, and the work should be performed in a way that neither reading nor writing is essential to performing the job duties.  *Id*. at 20-22.  The ALJ concluded that Plaintiff was unable to perform his past relevant work as a forklift operator, assembler, packer, and in construction.  *Id*. at 22-23.  Lastly, the ALJ determined that Plaintiff could perform jobs that exist in significant numbers in the national economy and was, therefore, not disabled.  *Id*. at 23-24.

## III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits.  These steps are:

1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.    An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.    If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

> 5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**IV.  STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.  *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).  Substantial evidence is more than a scintilla of evidence, but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.  *Id.*; *Walters,* 127 F.3d at 532.  Substantiality is based upon the record taken as a whole.  *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

**V.  ANALYSIS**

**A.  Whether the ALJ erred in his application of Listings 12.05C and D**

Plaintiff first contends that the ALJ erred when he conducted the analysis under Listings 12.05C and D.  ECF Dkt. #13 at 13-17.  Plaintiff contends that the ALJ did not dispute that Plaintiff has the required IQ deficits to meet Listings 12.05C or D.  *Id*. at 5.  Plaintiff contends that Listing

12.05 "presupposes that the person suffers from mental retardation" on a showing of significantly subaverage general intellectual functioning during the developmental period. *Id*.  In addition to a subaverage IQ score, Plaintiff contends that all that he must establish to meet 12.05C is the existence of another physical or mental limitation. *Id*  And to meet 12.05D, he contends that he must only additionally show marked restrictions in activities of daily living. *Id*.

Plaintiff's understanding of Listing 12.05 is erroneous because he neglects Listing 12.05's introductory paragraph.  In order to establish a disability pursuant to Listing 12.05C, a claimant must meet three requirements: (1) he must satisfy the introductory paragraph of Listing 12.05, which requires the showing of significantly subaverage general intellectual functioning with deficits in adaptive functioning that had initially manifested prior to the age of 22; (2) he must establish that he meets the first requirement of 12.05C by showing that he has a valid verbal, performance, or full-scale IQ of 60 through 70; and (3) he must establish that he meets the second requirement of 12.05C by showing he has a physical or mental impairment, other than the mental retardation impairment, that imposes an additional and significant work-related limitation of function.  20 C.F.R. Pt. 404, Subpt. P, App.1, Listings 12.00A, 12.05, 12.05C; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Plaintiff contends that an actual diagnosis of mental retardation is "irrelevant".  ECF Dkt. #17 at 2; *but see* ECF Dkt. #13 at 10-11.  While a diagnosis of mental retardation is not required, a diagnosis of mental retardation or a diagnosis excluding mental retardation is relevant because the language of the diagnostic criteria in the introductory paragraph of Listing 12.05 and the diagnostic criteria for mental retardation set forth in the DSM-IV-TR both require deficits in adaptive functioning.  *See* DSM-IV-TR at 49; 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, Listing 12.05.  "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills."  *West v. Comm 'r of Soc. Sec.*, 240 Fed. Appx. 692, 698-99 (6th Cir. July 5, 2007).  The definitions are similar enough that The Honorable Kathleen O'Malley of this Court has observed that the introductory paragraph of Listing 12.05 "tracks" the DSM-IV.  *See Thomas v. Commissioner of Social Sec.*, Case No. 08-CV-1365, 2010 WL 1254788 at *11 (N.D.Ohio Mar. 25, 2010) slip op.

-4-

In this case, the ALJ noted that no physicians of record have diagnosed Plaintiff with mental retardation and they have routinely diagnosed him with borderline intellectual functioning. Recently, Judge O'Malley has considered the issue of whether an ALJ's reliance on a diagnosis of borderline intellectual functioning constitutes substantial evidence in support of a finding that the introductory paragraph of Listing 12.05 has not been satisfied. *See Thomas*, 2010 WL 1254788 at *8-*12. In *Thomas*, the court held that a claimant is not required to present a diagnosis of mental retardation in order to satisfy Listing 12.05C, but he must presently suffer actual mental retardation in order to satisfy the threshold requirement of the introductory paragraph. *Id*. at *10 ("the flaw in Thomas' argument is that he ignores the threshold requirement of Listing 12.05-a finding that he presently suffers actual mental retardation."). The *Thomas* court pointed to *Cooper*, where the Sixth Circuit Court of Appeals held that "it is not enough for a claimant to point to one IQ score below 71; the claimant must also satisfy the 'diagnostic description' of mental retardation in Listing 12.05." *Id*. quoting *Cooper v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 450, 452 (6th Cir. 2007). The *Cooper* court reasoned that no psychologist had diagnosed the claimant with mental retardation, and the examiner and clinical psychologist who tested him advanced a diagnosis of borderline intellectual functioning. *Id.* Based on *Cooper* it is clear that the ALJ's finding in this case is supported by substantial evidence.

The *Thomas* court made clear that a diagnosis is not necessary to prove mental retardation, but some evidence is required. *Thomas*, 2010 WL 1254788 at *11. Specifically, the *Thomas* court noted that "[t]here is. . . ample Sixth Circuit authority for the proposition . . . that a clinical psychologist's diagnosis of the claimant as outside the definition of 'mental retardation' is an important factor for the ALJ to consider in determining whether the claimant satisfies the introductory paragraph of Listing 12.05(C)." *Id*. (collecting cases). In fact, "significant reliance on a diagnosis of something other than 'mental retardation,' such as 'borderline intellectual functioning,' is particularly sensible in light of the fact that the diagnostic description of mental retardation in the introductory paragraph of Listing 12.05 tracks the DSM-IV." *Id*. Given the holding in *Thomas* and the underlying precedents supporting it, the Court finds Plaintiff's contention to lack merit.

-5-

As with Listing 12.05C, Plaintiff must satisfy the introductory paragraph of Listing 12.05 in order to meet Listing 12.05D. *Jenkins v. Commissioner of Social Sec.*, No. 1:06cv552, 2008 WL 339790 at *7 (S.D.Ohio, Feb. 6, 2008), unreported. Accordingly, Plaintiff's argument lacks merit with respect to Listing 12.05D as well.

Plaintiff next contends that the ALJ improperly found that his depression was not severe. Given the foregoing analysis, even if Plaintiff were correct, he would not meet Listing 12.05C or D because he does not satisfy the introductory paragraph. Nevertheless, the ALJ properly found that Plaintiff did not have a significant work-related limitation of function. The ALJ noted that Plaintiff treated with Dr. Melchor Mercado, and Dr. Mercado diagnosed depression. Tr. at 16-17, 19 (reiterating that Plaintiff does not have an additional and significant work-related limitation of function). However, the ALJ noted that Dr. Mercado's treatment notes were meager, did not support any functional limitations related to depression, and offered only a conclusory statement that Plaintiff was disabled. *Id.* at 17. Even if Plaintiff were properly diagnosed with depression, the inquiry under Listing 12.05C is not whether he has an additional impairment, but whether he has an additional impairment that imposes a significant work-related limitation of function. Dr. Mercado's records do not support such a finding and the ALJ's finding in regard to the second prong of Listing 12.05C is supported by substantial evidence.

Plaintiff contends that a state agency evaluated him and found that he had a depressive syndrome characterized by difficulty in concentrating or thinking. ECF Dkt. #13 at 8 citing Tr. at 295. Plaintiff mischaracterizes this record. It shows that the state agency doctor considered whether Plaintiff had a depressive syndrom that satisfied Listing 12.04, which requires four criteria to be met. The doctor opined that only one was satisfied. Tr. at 295.

Plaintiff also contends that consultative examiner Roger Avery, PhD noted that his affect was depressed. ECF Dkt. #13 at 8 citing Tr. at 320. As Defendant notes, a diagnosis of depression is not enough. Plaintiff must show that the disorder results in significant work-related limitations. *See Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) ("...in order to qualify for the receipt of benefits for the period of time preceding September 4, 1985, plaintiff must show that she was *disabled* by

-6-

her dysthymic disorder.") (emphasis in original).

Plaintiff's brief then turns back to deficits in adaptive functioning.  ECF Dkt. #13 at 9-12.
Plaintiff cites the diagnostic criteria for mental retardation[1,2], and then contends that the information
he presented at the administrative level supports findings of deficits in adaptive functioning.

Plaintiff first cites a letter from his father stating that he performs Plaintiff's personal
business, pays bills, and responds "to any form of inquiry".  ECF Dkt. #13 at 10.  He also stated that
Plaintiff attended special education classes and needed special support from employers.  *Id.*

The ALJ acknowledged that Plaintiff's father assists him with bills.  Tr. at 18.  He went on
to note that Plaintiff was able to obtain a driver's license and drove until he lost his license due to
DUI convictions.  *Id.*  He lives by himself in an apartment, cooks, cleans, does laundry, mows the
lawn, does the grocery shopping, and helps his father in the garden.  The ALJ also noted that
Plaintiff volunteers at a soup kitchen 3-5 days a week and attends Alcoholics Anonymous meetings
5-7 times a week.  *Id.*

Plaintiff next contends that testimony from his sister, Mary Ann Geckler, demonstrates
deficits in adaptive functioning.  ECF Dkt. #13 at 10.  Plaintiff contends that his sister protected his
employment.  However the ALJ stated that Ms. Geckler testified that Plaintiff would lose inventory,
pack parts incorrectly, bump into crates that were ready for shipment and destroy them.  Tr. at 18.
Ms. Geckler contended that these things happened on a daily basis and that she protected Plaintiff's
job several times a month.  Tr. at 571-73.  The ALJ found her testimony not to be credible because
an employer would not tolerate costly daily mistakes such as losing or damaging inventory for an
8-year period.  Tr. at 18.  The ALJ further noted that Plaintiff continued to work for a year after Ms.
Geckler left the company and was then terminated for drug problems.  *Id.*; *see also* Tr. at 572.  The
ALJ further noted that Plaintiff held another position for approximately 5 years, and there was no

---

[1]     Of note, the definition Plaintiff cites requires "concurrent deficits or impairments in **present** adaptive functioning. . ."  ECF Dkt. #13 at 9 (emphasis added).

[2]     This citation is inconsistent with Plaintiff's assertion that a diagnosis of mental retardation is "irrelevant".  ECF Dkt. 17 at 2.

evidence of special support in that work environment.  Tr. at 18.

Furthermore, Plaintiff contends that Dr. Avery "referenced" a diagnosis of mental retardation in his discussion of the four work-related abilities.  ECF Dkt. #13 at 11.  However, Dr. Avery set forth a diagnosis of borderline intellectual functioning, not mental retardation.  Tr. at 324; *see Thomas*, 2010 WL 1254788 at *8-*12; *Cooper*, 217 Fed. Appx. at 452, *discussed supra*.  Axis II of Dr. Avery's diagnosis contains no assessment of mental retardation[3].  *Id*.  Here, Dr. Avery was merely commenting on the range in which Plaintiff's IQ score fell, stating, "these current results indicate that he is in the mild mental retardation range of intellectual functioning."  Tr. at 324.  However, "The regulations do not limit the question of validity to test results alone in isolation from other factors. In assessing the validity of a claimant's I.Q., '[i]nformation from both medical and nonmedical sources may be used to obtain detailed descriptions of the individual's activities of daily living; social functioning; concentration, persistance [sic] and pace; or ability to tolerate increased mental demands (stress).' "  *Brown v. Secretary of Health and Human Services*, 948 F.2d 268, 269-70 (6th Cir.,1991).

Finally, Plaintiff advocates that the Court should adopt the rebuttable presumption outlined in *Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001).  The issue in *Hodges* was whether the claimant's deficits in adaptive functioning onset prior to the age of 22: "The ALJ did not presume that Hodges' mental capabilities at 49 were the same as before twenty-two. . .The rationale behind this decision as revealed in the ALJ's decision letter is the lack of evidence revealing deficits in adaptive functioning initially manifested during the developmental period before age twenty-two."  *Id*. at 1268.  The Eleventh Circuit Court of Appeals held that:

> there is a presumption that mental retardation is a condition that remains constant throughout life. Therefore, we find that a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age twenty-two, when she presented evidence of low IQ test results after the age of twenty-two.

---

[3]     The *Diagnostic and Statistical Manual of  Mental Disorders: DSM-IV-TR*, sets forth a multiaxial assessment system, whereby each axis refers to a different domain of information that may help the clinician plan treatment and predict outcome.  *DSM-IV-TR* at 27.  Axis II is for reporting Personality Disorders and Mental Retardation.  *Id*. at 28-29.

*Id.* at 1266.

Even if the Court were to adopt the holding in *Hodges*, it would not help Plaintiff's case because the issue in *Hodges* is different than the issue in the case at bar.  Contrary to Plaintiff's assertion, he was not diagnosed with mental retardation.  *Compare* ECF Dkt. #13 at 11 *with* ECF Dkt. #324.  Here, the issue is not whether his deficits in adaptive functioning had an onset prior to age 22.  The issue is whether he had any deficits in adaptive functioning at all.  The ALJ discussed Plaintiff's activities of daily living and work history and his reasoning was supported by substantial evidence.  The *Hodges* case would not even apply on these facts.

Based on the foregoing, the undersigned recommends that the Court find the ALJ's analysis of  adaptive functioning to be supported by substantial evidence.  Further, the undersigned recommends that the Court reject Plaintiff's arguments pertaining to Listings 12.05C and D.

**B.      Whether the ALJ failed to give appropriate weight to a treating physician's opinion**

Next, Plaintiff contends that the ALJ failed to give proper weight to an opinion from Dr. Mercado, which states: "I do not believe he is able to do any meaningful job at this time."  ECF Dkt. #13 at 13.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security.  Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).  Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390

-9-

(6th Cir. 2004) quoting  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985).  When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion:  the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*  If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

Plaintiff's argument lacks merit because Dr. Mercado's opinion invades the province of the ALJ.  "When a treating physician . . . submits an opinion on an issue reserved to the Commissioner-such as whether the claimant is 'disabled' or 'unable to work'-the opinion is not entitled to any particular weight." *Turner v. Commissioner Of Social Security*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20C.F.R. §416.927(e)(1).  "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion."  *Id.* (internal quotation and citation omitted).  In *Turner*, a treating source opined that the claimant was unable to work" and was not "currently capable of a full-time 8-hour workload."  *Id*. at *5.  The Sixth Circuit held that the ALJ adequately

addressed the opinion in stating that it was an opinion on an issue reserved to the Commissioner. *Id*. That is precisely what the ALJ did in this case. *See* Tr. at 17.  Additionally, the ALJ stated that Dr. Mercado only saw Plaintiff every three months and the treatment notes were "meager" and did not support a conclusion that Plaintiff's impairment was disabling. *Id*.

Accordingly, the undersigned recommends that the Court find that the ALJ's decision to discount Dr. Mercado's opinion was supported by substantial evidence.

### C.       Whether the ALJ erred in discounting testimony from Mary Ann Geckler

Plaintiff contends that the ALJ erred in discounting testimony from Mary Ann Geckler. ECF Dkt. #13 at 15. Plaintiff contends that there is nothing in the record to support the ALJ's finding regarding her testimony. *Id*. Ms. Geckler herself testified that Plaintiff remained employed for a year and was terminated for drug problems. Tr. at 572. The ALJ merely used Ms. Geckler's own testimony as a basis for discrediting her.

In any event, "[d]iscretion is vested in the ALJ to weigh all the evidence." *Collins v. Commissioner of Social Sec.*, 357 Fed.Appx. 663, 668 (6th Cir. 2009) (internal quotation omitted). "The ALJ is, additionally, charged with the responsibility of observing the demeanor and credibility of witnesses therefore his conclusions should be highly regarded." *Id*. (internal quotation omitted). "On review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying. In reviewing an ALJ's credibility determination, we are limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record. We may not on appeal try the case de novo, nor resolve conflicts in evidence...." *Id*. (internal quotations and citation omitted).

Given the foregoing, along with the ALJ's explanation for discounting Ms. Geckler's testimony as discussed in Section V.A., above, the undersigned recommends that the Court find that the ALJ's decision to discount Ms. Geckler's testimony was supported by substantial evidence.

**D.**    **Whether the ALJ erred in finding that jobs exist in significant numbers that Plaintiff can perform**

Plaintiff essentially argues that the ALJ erred in discounting Dr. Avery's opinion, and consequently erred in his ultimate RFC determination.  ECF Dkt. #13 at 16-19.  Plaintiff contends that the ALJ improperly relied on the opinion of a non-examining doctor instead of the opinion of Dr. Avery, who conducted a consultative examination. *Id*. at 17.  Plaintiff specifically contends that the ALJ should have included restrictions in his RFC based upon Dr. Avery's opinion. *Id*. at 18.

Generally, the ALJ will give more weight to the opinion of a source who has examined a claimant than to the opinion of a source who has not examined the claimant.  20 C.F.R. §416.927(d)(1).

In this case, Dr. Avery opined that Plaintiff's mental ability to relate to others was markedly impaired based on his mild mental retardation range of verbal intelligence.  Tr. at 324.  He opined that Plaintiff's mental ability to understand, remember and follow instructions is markedly impaired based on his mild mental retardation range of verbal intelligence, moderately impaired based on his borderline range of performance intelligence, and markedly impaired based on his mild mental retardation range of working memory. *Id*.  Dr. Avery opined that Plaintiff's mental ability to maintain concentration, persistence and pace to perform simple, repetitive tasks is moderately impaired based on his borderline range of processing speed. *Id*. at 325.  Lastly, Dr. Avery opined that Plaintiff's mental ability to withstand the stress and pressures associated with day-to-day work activities is markedly impaired; he shows mental limitations in the areas relating to comprehending due to the effects of his mild mental retardation range of intellectual functioning. *Id*.

The ALJ noted that the limitations identified in Listing 12.05D are not a residual functional capacity assessment, but are used to rate the severity of mental impairments at steps 2 and 3.  Tr. at 19.  Notably, Dr. Avery's opinions were limited to mental impairments.  Tr. at 324-25.  Regardless of the source of impairment, Dr. Avery opined that Plaintiff had a functional impairment.  The ALJ did address Dr. Avery's opinion related to functional limitations in his RFC analysis. *See* Tr. at 21-22.

-12-

The ALJ discounted Dr. Avery's opinion related to concentration, persistence, and pace because Richard Davis assessed no limitations in this regard and noted that Plaintiff had performed repetitive tasks throughout his life.  Tr. at 19.  The ALJ noted that Plaintiff's work history supported that conclusion.  *Id*.  The undersigned recommends that the Court find this decision to be supported by substantial evidence based upon the discussion of Plaintiff's work history above.

The ALJ credited Dr. Avery's opinion related to social functioning.  Tr. at 19.  He noted that Plaintiff could relate sufficiently to coworkers and supervisors in performing simple tasks.  *Id*. at 21.  The ALJ limited Plaintiff's RFC to simple tasks.  *Id*. at 20.

The ALJ gave the remainder of Dr. Avery's opinion limited weight because it was not consistent with other evidence in the record and is undermined by Plaintiff's credibility as a historian.  Tr. at 22.  The ALJ specifically indicated that the non-examining doctor, Nancy McCarthy, noted that Plaintiff had given various consultative examiners different information about his substance abuse and cessation.  Tr. at 21.  He further noted that Plaintiff told Dr. Avery that it was his first time applying for disability, but he had applied multiple times.  *Id*.   He claimed hallucinations, but he could not describe them.  He told Dr. Avery that he does not attend any groups, but he has claimed to attend AA meetings regularly.  *Id*.  The ALJ then noted that Dr. McCarthy did not give great weight to Dr. Avery's conclusions.  *Id*. at 22.

Plaintiff contends that the ALJ failed to explain how these inconsistencies would have affected Dr. Avery's opinion.  ECF Dkt. #13 at 17.  Further, Plaintiff has cited no authority requiring the ALJ to specifically articulate his reasons for rejecting Dr. Avery's opinion in these circumstances.  Of note, Plaintiff does not challenge the ALJ's observation that inconsistencies exist.  Rather, Plaintiff contends that "The claimed inconsistencies were the result of plaintiff's failure to divulge information that in all probability would have enhanced his claimed impairments in as much [sic] as they related [sic] surgeries and disability applications."  *Id*.

Plaintiff contends that "[t]he findings of Dr. Avery are based on standardized testing which consider the potential for falsification and malingering.  His conclusion as to Pinkelman's four work related disabilities (TR 324-325) are entirely based on those test results which concluded Pinkelman

-13-

suffered from mild mental retardation." *Id.*  The undersigned reiterates that Dr. Avery diagnosed borderline intellectual functioning, not mental retardation.  Dr. Avery administered the following subjective tests: a Peabody Individual Achievement Test, Reading Comprehension Subtest, a Wechsler Adult Intelligence Scale - Third Edition  IQ test, and a Wechsler Memory Scale  Third Edition test.  Plaintiff has cited no authority for the proposition that these tests "consider the potential for falsification and malingering."  As noted above, "The regulations do not limit the question of validity to test results alone in isolation from other factors."  *Brown*, 948 F.2d at 269-70.

The undersigned cannot ignore that the ALJ's decision rests on a mischaracterization of the record.  The ALJ stated that "Dr. McCarthy therefore did not give great weight to Mr. Avery's conclusions that were more limiting than the State agency's mental residual functional capacity assessment."  Tr. at 22.  Had Dr. McCarthy in fact used her specialized training as a doctor and articulated a reason as to why the inconsistencies of record would have affected Dr. Avery's opinions related to the four-work related areas of limitation, then perhaps the ALJ's decision would have been supported by substantial evidence.  However, Dr. McCarthy never addressed Dr. Avery's opinions or conclusions.  *See* Tr. at 306, 309.  Dr. McCarthy only commented on Plaintiff's statements to Dr. Avery.  Aside from Dr. McCarthy's status as a doctor, the undersigned can see no reason for giving Dr. McCarthy's opinion regarding functional limitations more weight than Dr. Avery's opinion.  Dr. McCarthy never explicitly rejected Dr. Avery's opinion and offered no explanation for implicitly rejecting it.  Further, Dr. Avery supported his opinion related to functional limitations by pointing to functional testing.  *See* Tr. at 324-25.  While the undersigned does not adopt Plaintiff's rationale that the testing "consider[s] the potential for falsification and malingering," neither Dr. Avery nor Dr. McCarthy gave any indication that subjective reporting had a bearing on these tests in this case.  Further, the ALJ's decision is based upon a mischaracterization of Dr. McCarthy's opinion.

The undersigned recommends that the Court remand the instant case for the ALJ's improper treatment of Dr. Avery's opinion in regard to work-related impairments, specifically the abilities to relate to others, to understand and follow instructions, and to withstand stress and pressures

-14-

associated with day-to day work activities.  Magistrate Judge Baughman noted that harmless error analysis requires:

> (1) A fully developed record as to all factual issues essential to the decision;
>
> (2) No substantial doubt that the agency would have made the same ultimate finding with the erroneous, subsidiary finding removed from the picture.

*Pechatsko v. Commissioner of Social Security*, 369 F.Supp.2d 909, 914-15 (N.D.Ohio,2004) (internal footnoted omitted).   Here, the Court is left to speculate as to how the ALJ would treat Dr. Avery's opinion if the erroneous finding regarding Dr. McCarthy were removed.  Although the ALJ relied on other physicians of record, the case should be remanded for specific consideration of Dr. Avery's opinion.

Further, if the ALJ were to adopt Dr. Avery's opinion in regard to work-related abilities, it could affect Plaintiff's RFC.  Therefore, the ALJ's error is not harmless and the Court should remand the case for further factfinding, analysis, and articulation by the ALJ.

## VI.    CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court REVERSE the Commissioner's decision and REMAND this case for further factfinding, analysis, and articulation by the ALJ pertaining to Dr. Avery's opinion as to Plaintiff's work-related abilities, specifically the abilities to relate to others, to understand and follow instructions, and to withstand stress and pressures associated with day-to day work activities.

DATE:  August 13, 2010                                   ___*/s/George J. Limbert*_____

                                                         GEORGE J. LIMBERT
                                                         UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  L.R. 72.3(b).